```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


KAYODE ADEYEMI,                  :   HONORABLE JOSEPH E. IRENAS
                                 :
          Petitioner,            :   Civil Action No. 05-5974(JEI)
                                 :
     v.                          :
                                 :   AMENDED OPINION
UNITED STATES OF AMERICA,        :
                                 :
          Respondent.            :
                                 :
```

**APPEARANCES:**

KAYODE ADEYEMI, Petitioner *pro se*
# 26460-050
FCI OTISVILLE
P.O. Box 1000
Otisville, NY 10963

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
BY: Milagros Camacho, Esq.
970 Broad Street, Sixth Floor
Newark, NJ 07102
          Counsel for Respondent

**IRENAS**, Senior District Judge,

   Before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255.[1] Petitioner argues that his Sixth Amendment right to counsel was violated because his lawyer failed to raise several arguments for downward departures under the United States Sentencing Guidelines ("U.S.S.G."). (Pet. Mot. at 5; Pet. Mem. at 10-11) For the

---

[1] Petitioner has also filed a Motion for Summary Judgment reasserting the arguments in favor of his § 2255 Petition. Because the Court will deny the Petition, the Motion for Summary Judgment will be dismissed as moot.

reasons set forth below, Petitioner's application will be denied without an evidentiary hearing.

**I.**

Petitioner Kayode Adeyemi arrived in the United States on June 16, 2004, via a Virgin Atlantic flight that departed from London, England and arrived at Newark International Airport in New Jersey.  (Presentence Investigation Report ("PSR") at 6) During the course of a customs examination, Petitioner admitted that he had swallowed approximately 70 pellets containing heroin. (Id.)  Petitioner was then taken into custody.  (See id. at 6, 13)  Subsequent analysis of the pellets revealed Petitioner ingested 770 grams of heroin in an attempt to smuggle the narcotics into the United States.  (See id. at 7)  Upon his arrest, Petitioner cooperated with the authorities by providing extensive information.

In exchange for his cooperation, Petitioner accepted a plea agreement under which he would plead guilty to importing more than 700 grams but less than 1 kilogram of heroin.  (PSR at 3) The stipulated facts resulted in a Base Offense Level of 30.[2] (Id. (citing § 2D1.1(C)(5))  On May 19, 2005, Petitioner pled guilty to a one count information in violation of 21 U.S.C. §§ 952(a) and 960(b)(2)(A) and 18 U.S.C. § 2.  (Id. at 1, 3)  As

---

[2] Petitioner's Motion does not challenge the propriety of the Base Offense Level.

described in the PSR, offense level reductions were recommended for minor participation in the criminal activity (minus 2 levels, *see* § 3B1.2(b)), acceptance of responsibility (minus 2 levels, *see* § 3E1.1(a)), assisting authorities in prosecuting the offense (minus 1 level, *see* § 3E1.1(b)), and satisfying the "safety valve" provisions of the U.S.S.G. (minus 2 levels, *see* §§ 5C1.2 and 2D1.1(b)(6)).  (Id. at 9-10)  As a result of these reductions, the recommended Total Offense Level was 23.  (Id.)

Generally, a violation of 21 U.S.C. § 960(b)(2)(A) carries a mandatory minimum sentence of 60 months.  (Id. at 14)  The recommended period of imprisonment for a Level 23 offense is 46 to 57 months.  (Id.; see also U.S.S.G. ch. 5 pt. A)  Where, as here, the mandatory minimum sentence is greater than the upper limit of the recommended penalty under the guidelines, the mandatory minimum sentence becomes the recommended guideline sentence.  § 5G1.1(b).

Petitioner had the opportunity to achieve relief from the 60 month mandatory minimum sentence via a showing of specified factors relating to his criminal history and conduct or by motion of the Government.  (See PSR at 15 (citing 18 U.S.C. § 3553(f), U.S.S.G. § 5C1.2, 18 U.S.C. § 3553(e), U.S.S.G. § 5K1.1))  Petitioner made the requisite showing under § 5C1.2 to gain relief from the mandatory minimum sentence.  (See PSR at 9)

Beyond this, the Government exercised its discretion under § 5K.1 and 18 U.S.C. § 3553 to request a sentence below the guideline range. (See Ltr. from U.S.D.O.J. at 1-2). Finally, Petitioner's counsel submitted a seven page brief with three attached exhibits. The brief sought a sentence of 30 months and delineated various justifications for this request. *See infra* pt. III (citing relevant aspects of Petitioner's Pre-Sentencing Brief).

This Court imposed a sentence of 30 months imprisonment on August 19, 2005. (Judgment dated Aug. 24, 2005, at 1-2) Nevertheless, Petitioner believes he received ineffective assistance of counsel in violation of the Sixth Amendment. He filed the instant motion on December 22, 2005.

**II.**

Section 2255 provides, in pertinent part, that:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to
> be released upon the ground that the sentence was
> imposed in violation of the Constitutional or laws
> of the United States, or that the court was without
> jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by
> law, or is otherwise subject to collateral attack,
> may move the court which imposed the sentence to
> vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2000); *see also* Rules Governing § 2255 Cases,

Rule 1(1). Thus, Petitioner is entitled to relief only if he can establish that he is in custody in violation of federal law or the Constitution.

A district court is given discretion in determining whether to hold an evidentiary hearing on a habeas petition under Section 2255. *See Gov't of the V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, the court must first determine whether the petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 291 (3d Cir. 1991). Accordingly, a district court may summarily dismiss a motion brought under Section 2255 without a hearing where the "motion, files and records, 'show conclusively that the movant is not entitled to relief.'" *U.S. v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *U.S. v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)); *Forte*, 865 F.2d at 62.

For the reasons outlined below, the Court finds that the evidence in the record conclusively demonstrates that Petitioner is not entitled to the relief sought. Accordingly, Petitioner's application will be denied without an evidentiary hearing.

### III.

Petitioner alleges his counsel was constitutionally

ineffective by failing to raise a variety of issues in order to gain downward departures under the U.S.S.G. (Pet. Mem. at 10-11) Specifically, Petitioner maintains the following issues were not raised by his counsel: (1) Petitioner's distressed emotional state under § 5K2.3; (2) Petitioner's poor physical health under §§ 5H1.4 and 5H1.1; (3) Petitioner's consent to deportation; and (4) the degree of Petitioner's family responsibilities under §§ 5H1.6 and 5K2.0(3). (See id. at 6-8, 10-11)

A convicted defendant seeking to have his conviction or sentence vacated due to the incompetence of counsel must show that his counsel's performance was deficient and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

**A.**

Petitioner lists a number of personal hardships that occurred prior to and during his confinement. (See Pet. Mem. at 6-7) Those events include the death of his son and the loss of his home in Nigeria due to bank foreclosure. (Id.) Based on these occurrences, Petitioner claims that he suffered from an "Extreme Psychological Injury" at the time of his sentencing, entitling him to a downward departure pursuant to § 5K2.3. (Id. at 6)

Section 5K2.3 permits a Sentencing Court to *increase* the

6

sentence of a convicted party above the recommended guideline range upon a showing of severe psychological injury to the *victim* of a criminal act.  This section does not contemplate reduction of a sentence for any reason, including emotional state of the convicted party.  *See* § 5K2.3.

Therefore, § 5K2.3 did not afford Petitioner an opportunity for a downward departure.  It follows that his counsel properly did not raise an argument on Petitioner's behalf by reference to § 5K2.3.

To the extent that Petitioner generally advances his emotional state as the basis for a downward departure, this assertion implicates § 5H1.3.  Under § 5H1.3, mental and emotional conditions are "not ordinarily relevant" to sentence calculations.  A downward departure based on a convict's emotional condition should occur "only in exceptional cases, and only if the circumstance is present in the case to an exceptional degree."  Commentary to U.S.S.G. § 5K2.0, 3(C); *see also United States v. Watson*, 385 F.Supp. 2d 534, 538 (E.D. Pa. 2005) ("Only mental and emotional conditions that are established to an exceptional degree or that in some way make the case different from the ordinary case in which the condition is present may be a basis for departure." (citing *United States v. McBroom*, 124 F.3d 533, 538 (3d Cir. 1997))).

In this case, the PSR reflected the mental and emotional

7

health issues of Petitioner, noting he was in "poor mental and emotional health." (PSR at 12) Indeed, the report specifically noted the death of Petitioner's son and the resultant impact on his psyche. (See id.) Petitioner's counsel also stated that the bank foreclosure on his property and ill health of his mother and mother-in-law, caused Petitioner emotional suffering. (Def. Presentencing Brief, dated Aug. 10, 2005, at 2-3) Therefore, Petitioner's claim that his emotional state was not raised at sentencing is contradicted by the PSR and his lawyer's brief. Thus, Petitioner's counsel sufficiently raised the issue of emotional condition.

Further, Petitioner's emotional suffering in connection with the passing of his son and the loss of his home is not "exceptional," as that term is used in § 5K2.0.[3] For this reason, even if Petitioner's counsel had not raised this issue, no prejudice would have resulted. Accordingly Petitioner's Sixth Amendment rights were not violated.

**B.**

Petitioner next maintains his counsel failed to raise the issue of his physical condition. (Pet. Mem. at 7, 10) He maintains that his diabetes entitled him to a downward departure

---

[3] *Contrast United States v. Barbour*, 66 Fed. App'x 327, 329-30 (3d Cir. 2003) (recognizing that other Circuits permit downward departures under §§ 5H1.3 and 5K2.0 when the convicted party had suffered severe child abuse; reaffirming that district courts have discretion to decide what is an "exceptional" psychological condition).

under §§ 5H1.1 and 5H1.4.  (Id. at 7)

Section 5H1.1 discusses the impact of age on sentencing and directs this Court to § 5H1.4 as instructive on issues of physical conditions.  Under § 5H1.4, physical condition is "not ordinarily relevant" in considering downward departures.  The section reserves the right to depart downward when a physical condition constitutes an "extraordinary physical impairment." *See* § 5H1.4.

The PSR indicated Petitioner had diabetes and specified symptoms resulting from the illness, including frequent urination and poor circulation.  (PSR at 12)  Petitioner's claim that his physical condition was not raised prior to sentencing is thus directly contradicted by the PSR.  Therefore, his counsel was not deficient, as the issue of Petitioner's diabetes was considered by this Court at sentencing.

Moreover, even if Petitioner's diabetes-- an ailment which affects 10.5% of his peers[4]-- was not raised, no prejudice resulted because diabetes is not an "extraordinary" condition under § 5H1.4.  *See United States v. Hernandez*, 89 F.Supp. 2d 612, 616 (E.D. Pa. 2000) (refusing to grant a downward departure to a defendant who had diabetes, asthma, and high blood

---

[4] According to the Centers for Disease Control and Prevention (CDC), about 10.5% of men over the age of 20 suffered from diabetes as of 2005. Centers for Disease Control and Prevention, National Diabetes Fact Sheet: General Information and National Estimates on Diabetes in the United States 4 (U.S. Department of Health and Human Services, Centers for Disease Control and Prevention 2005), http://www.cdc.gov/diabetes/pubs/pdf/ndfs_2005.pdf.

9

pressure).  Therefore, Petitioner's Sixth Amendment rights were not violated.

### C.

Petitioner claims his counsel failed to argue for a downward departure based on Petitioner's consent to deportation.  (PSR at 7-8, 10) Under certain circumstances, a downward departure may be granted pursuant to § 5K2.0 based on consent to deportation.  *See United States v. Marin-Castaneda*, 134 F.3d 551, 554-55 (3d Cir. 1998).

In the pre-sentencing brief, Petitioner's counsel notified this Court that Petitioner signed an Affidavit of Deportation. (Def. Pre-sentencing Brief at 7 n.1)  Further, the brief emphasized Petitioner's desire to rebuild his family and social standing.  It is clear that these desires could only be fulfilled if Petitioner returned to Nigeria.  Thus, Petitioner's assertion that his willingness to return to Nigeria was not raised by counsel is contradicted by the record.

In any event, even if the Court assumes that counsel did not adequately raise the issue, Petitioner was not entitled to a downward departure based on consent to deportation.  Therefore, no prejudice could have resulted.

In *United States v. Marin-Castaneda*, the Third Circuit addressed a factual background virtually identical to the instant case.  *See Marin-Castaneda*, 134 F.3d at 553.  In *Marin-Castaneda*,

a narcotics smuggler arrived at Newark International Airport and was detained by Customs on the basis of visible heroin. *Id.* In addition, the smuggler had swallowed heroin pellets. *Id.* Prior to sentencing, the smuggler sought a downward departure by reference to § 5K2.0 because he had consented to deportation following his prison term. *Id.* The district court denied the request. *Id.* Affirming the district court, the Third Circuit observed that the smuggler was "not a resident alien, but a [foreign] national who . . . set foot on United States soil for the sole purpose of importing heroin, [thus] it seems unlikely that he would have had any remotely colorable basis for opposing deportation." *Id.* at 555. Therefore, the smuggler's consent to deportation merely conceded the inevitable and did not merit a downward departure under § 5K2.0. *See id.* at 555 ("[A] defendant without a nonfrivolous defense to deportation presents no basis for downward departure under section 5K2.0 by simply consenting to deportation . . . .").

Petitioner stands in an identical position to the smuggler in *Marin-Castenada*. The PSR and the corresponding Sentencing Recommendation reference the likelihood that Petitioner will be deported upon his release from custody. (See PSR at 14; Sentencing Rec. at 2) As Petitioner entered the United States for the sole purpose of importing narcotics, he has no more colorable basis for opposing deportation than the smuggler in

*Marin-Castenada*.  Petitioner was not entitled to a downward departure under § 5K2.0, notwithstanding his consent to deportation.  Therefore, even if his counsel did not sufficiently raise this element, no prejudice resulted to Petitioner.  Thus, Petitioner's Sixth Amendment rights were not violated.

### D.

Petitioner finally contends he was entitled to a downward departure based on his degree of family responsibility.  *See* §§ 5H1.6 and 5K2.0.  He claims that his incarceration has caused his family to lose their home due to insufficient funds.  (Id.) Petitioner also argues that his absence has had a detrimental emotional impact on his wife and children. (Id.)

"Family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." § 5H1.6.  A downward departure based on a convict's family ties and responsibilities should occur "only in exceptional cases, and only if the circumstance is present in the case to an exceptional degree."  Commentary to U.S.S.G. § 5K2.0, 3(C).  "Disruptions of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration.  Disintegration of family life in most cases is not enough to warrant departures."  *United States v. Sweeting*, 213 F.3d 95, 102 (3d Cir. 2000) (quoting *United States v.*

12

*Gaskill*, 991 F.2d 82, 85 (3d Cir. 1993)) (alteration in original).

First, the record disproves Petitioner's assertion that his lawyer did not adequately raise the extent of his family responsibilities.  The pre-sentencing brief submitted by Petitioner's attorney describes the results of Petitioner's absence, including loss of the family property, lack of funding for education, and deteriorating health of family members.  (Def. Brief at 2-3)

Second, Petitioner's arguments are based on familial hardships that are frequent corollaries to imprisonment.  Unfortunately, the impact on Petitioner's family is typical, not exceptional.  Even if Petitioner's familial obligations were not raised prior to sentencing, no prejudice would have resulted because these obligations did not entitle him to a downward departure.  Accordingly, Petitioner's Sixth Amendment rights were not violated.

**IV.**

For the reasons set forth above, this Court will deny Petitioner's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255 without an evidentiary hearing.  Because the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.  *See* 28 U.S.C.

§ 2253(c).  The Court will issue an appropriate order.

Date:     July  5th , 2006

                                                            s/*Joseph E. Irenas*

                                                            **Joseph E. Irenas, S.U.S.D.J.**